490 F.2d 917
 WILLIAM F. WILKE, INC., a Maryland corporation, Appellant,
v.
DEPARTMENT OF the ARMY OF the UNITED STATES of America et
al., Appellees.
WILLIAM F. WILKE, INC., Plaintiff-Appellee,
v.
DEPARTMENT OF the ARMY OF the UNITED STATES of America and
Robert F. Froehlke, Secretary of the Army,
Defendants-Appellants, A & M Gregos,
Inc., Intervenor-Defendant.
WILLIAM F. WILKE, INC., a Maryland corporation, Appellee,
v.
DEPARTMENT OF the ARMY OF the UNITED STATES of America and
Robert F. Froehlke, Secretary of the Army,
Defendants, A & M. Gregos, Inc., Appellant.
 Nos. 73-1483, 73-1484, 73-1497.
 United States Court of Appeals, Fourth Circuit.
 Dec. 17, 1973.
 DENNIS R. KNAPP, District Judge (dissenting):
 
 1
 I respectfully dissent from the conclusions of the majority in affirming the District Court's denial of injunctive relief to the plaintiff herein.
 
 
 2
 The finding of the District Court that the Gregos' bid was 'untimely, nonresponsive, contrary to the terms of the invitation, void and of no effect' was clearly right. Such finding clearly encompassed a determination by the District Court that the Army violated the applicable statutes and the regulations promulgated thereunder.[1] This means that a clear legislative mandate was flaunted with impunity by an agency of government charged with the duty to observe the law. The Army proceeded to award the bid to Gregos even after notice that legal action had been instituted, and in fact before the issue was determined by the District Court. Such action was not only illegal but was arbitrary, capricious and an affront to the established processes of the government of which it was a part.
 
 
 3
 It is clear beyond question that the unilateral action of the Army in awarding the bid to Gregos ignored the law to which it was committed and in effect amounted to an award of a contract by negotiation when there was no compelling reason so to do. Under the facts here, there was no emergency nor any circumstance requiring hasty action. To comply with the regular procurement requirements under the facts and circumstances was the clear duty of the Army, and it should have been required to exercise that duty by the District Court.
 
 
 4
 The majority concluded that the granting of injunctive relief was discretionary, relying on the case of M. Steinthal & Co. v. Seamans, 147 U.S.App.D.C. 221, 455 F.2d 1289 (1971). I do not agree that Steinthal supports such conclusion. In my opinion it is clearly distinguishable. Furthermore, I do not agree that the facts support the statement of the majority that a situation is here presented where the 'granting of any relief is unusual.' Finally, I do not agree that Wilke's right to recover bid costs provides a sufficient remedy.
 
 
 5
 The case of M. Steinthal & Co. v. Seamans, supra, as previously indicated is clearly inapplicable to the facts and the issues raised in the instant case. In Steinthal each of the three bidders interpreted differently the provisions of the amended information for bidders with respect to the required delivery dates of parachutes. The contracting officer then submitted to the Air Force Logistics Command a statement of facts and findings. Subsequently, he received a list of comments which contained certain basic rules that must be adhered to in formal advertising. Need was stressed to preserve competitive bidding by solicitations permitting competition on an equal basis without deviation from the delivery provisions through waiver of reservation by the contracting officer or freedom to determine whether delivery time should be a factor in the award. The contracting officer then reevaluated his findings and determined that the invitation should be cancelled because of the ambiguity in the delivery schedule. Suit was then filed by Steinthal alleging that the cancellation of the amended IFB was arbitrary and capricious and requesting injunctive relief to prevent the opening of bids on IFB No. 2. The court found that the cancellation of bids was reasonable. The regulations permit the contracting officer to cancel bids if he determines that one of certain factors is present including 'inadequate or ambiguous specifications cited in the invitation.' The court then went on to find that peculiar circumstances of each case must be reviewed with a regard toward limiting the instances of unnecessary judicial intervention in the procurement process. The court did not reverse the holding in Scanwell Laboratories v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859, but rather called for greater discretion in the presence of overriding public interest considerations in refusing to enter declaratory or injunctive action in a preprocurement context. Instead, the court found that Scanwell and its progency imposed a responsibility upon the courts to study the cases attentively and exercise restraint with the power to enjoin a procurement program. The relevant language in Steinthal is as follows: 'The Court is obligated to restrict its inquiry to a determination of whether the procurement agency's decision has a reasonable basis. This inquiry must fully take into account the discretion that is typically accorded officials and the procurement agencies by statutes and regulations. Such discretion extends not only to the evaluation of bids submitted in response to a solicitation but also to determination by the agency with respect to the application of technical, and often esoteric, regulations to the complicated circumstances of individual procurements.'
 
 
 6
 As indicated above, the court does not extend its function to those matters which are by the regulations not within the discretion of the officials. The court goes on further to talk about a prolonged period of time which it might take in settling such claims when contracts are vital to functions performed by the state. However, there is no time element involved in the instant case to bring this particular objection into play.
 
 
 7
 As hereinbefore indicated, a careful comparison of Steinthal and the instant case will clearly reveal significant differences. In Steinthal there is ambiguity in the invitation for bids. In Wilke there is none. In Steinthal the regulations vest discretion in the contracting officer to refuse the bids where an ambiguity exists in the invitation for bids. In Wilke the bid officer has no discretion to vary the time for receipt of bids. The cases cited by both parties clearly indicate that the only discretion which the bid officer has with respect to time is in case there is a discrepancy in the time in more than one clock. In such a case he may determine which clock is to be used. However, when there is no question as to the proper time, there is no discretion to be vested in the officer. More alarming, however, is the conduct of both the government and Gregos in the face of possible court action by Wilke. Although the government was well aware of the pending court action, on the very day that a hearing was set for the issuance of a temporary restraining order the government notified Gregos of its award of the contract. Said notice was sent by telegram. Moreover, after issuance of the temporary restraining order by the district judge on that same day the government sent notice to Gregos by letter. This gave Gregos ample opportunity to enter into a number of sub-contracts in somewhat questionable good faith prior to receipt of the letter. This action by the Government and Gregos, coupled with the government's weak argument that the method of closing the time for receipt of bids was customary for the last twenty years should not be sanctioned or condoned.
 
 
 8
 I am of the firm opinion that the cases relied on by the district court and by the majority here establish only that injunctive relief may be withheld in cases where unusual circumstances exist, such as an emergency or where some ambiguity or special situation dictates a relaxation of the requirements of the procurement processes established by law. No such facts are here presented. There was no discretion to be exercised by the Army. Consequently, the court had no basis in law or in equity for the exercise of discretion.
 
 
 9
 While I agree that judicial intervention in the procurement processes of agencies of government should be limited and that the peculiar circumstances of a particular case should be weighed in favor of nonintervention, the concept should not be extended beyond its obvious purpose. Certainly the courts should not refrain from granting relief when, as here, the governmental agency arbitratily transgressed statutory limits and defied its own regulations and particularly where there were no exigent circumstances and no emergency to warrant it. In my opinion the law set out in the cases relied upon by the district court was misapplied. I do not believe that under any view of the facts of this case the denial of an injunction can be justified. In fact, to do so is to exercise a discretion that is at best illusory and transcendent.
 
 
 10
 It follows that I would reverse.
 
 
 
 [1]
 Section 2-301(a) of the Armed Forces Procurement Regulation provides in part that a bid must comply with the invitation for bids both as to method and timeliness of submission. Section 2-303.1 provides: 'Bids which are received . . . after the exact time set for opening bids are 'late bids' even though received only one or two minutes late. Late bids shall not be considered for award except as otherwise authorized.'