No. 13334

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

CARL LEO ORSBORN,

Defendant and Appellant.

---

Appeal from:  District Court of the Eleventh Judicial District,
              Honorable Robert S. Keller, Judge presiding.

Counsel of Record:

For Appellant:

Fennessy, Crocker and Harman, Libby, Montana
David W. Harman argued, Libby, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
John North, Assistant Attorney General, argued,
Helena, Montana
William A. Douglas, County Attorney, argued, Libby,
Montana

---

Submitted:  August 30, 1976

Decided: SEP 30 1976

Filed:

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant appeals from his conviction of one count of aggravated assault and the 20 year sentence imposed by the district court, Lincoln County.

The record reveals this sequence of events: On August 12, 1974 defendant Carl Leo Orsborn began a lengthy period of drinking by consuming a drink shortly after arising at about 6:00 a.m. Later in the morning he had a drink with a friend. At approximately 1:00 p.m. he entered the Mine Lounge in Libby, Montana and had several drinks including one with a fellow patron, Charles A. Lowder.

After drinking most of the day Orsborn encountered Jesse First Raised and they went to the Mine Lounge to close out the day of drinking. Lowder was still at the bar quite intoxicated and the barmaid pursuaded Orsborn and First Raised to get him out of the bar so she could close up. They put Lowder in Orsborn's car and after driving around for sometime they parked at a gravel pit located out of town. The testimony is in conflict as to whether or not the two men were going to "roll" Lowder but there was no question that some kind of fracas occurred at the gravel pit and Lowder was hit by a rock thrown by Orsborn.

After this incident, Orsborn and First Raised got back in the car and continued driving until they encountered Thomas A. Miller who was parked along the roadside with a flat tire. They stopped and got a tire iron out of the trunk of Orsborn's car to fix the flat tire. What happened next is subject to conflicting testimony. First Raised testified Orsborn struck Miller with a

- 2 -

pulaski (an axe-hoe combination tool). Miller testified Orsborn swung down with something. Orsborn testified he did not attack Miller. At any rate, Miller suffered bruises to his neck and shoulder.

Based on these two incidents, an Information was filed in district court on August 15, 1974, charging Carl Leo Orsborn with two counts of aggravated assault in violation of section 94-5-202, R.C.M. 1947. Count I charged defendant with aggravated assault by purposely or knowingly causing bodily injury to Charles Albert Lowder by means of a weapon. Count II charged the same as to Tom A. Miller. Trial was had on October 16, 1974, with Jesse First Raised appearing as a witness for the state having been granted immunity from prosecution for any role he had in the incidents. The jury after retiring to consider a verdict reported it was deadlocked, whereupon the court declared the matter a mistrial.

On November 12, 1974, a motion to sever the two counts and request for separate trials was made by defendant. This motion was subsequently denied. Defendant was again tried on the two counts of aggravated assault on December 2, 1974. At the close of the state's case, defendant's motion to dismiss Count I was denied. On settling jury instructions, the court refused defendant's proposed Instruction No. 2, covering the lesser included offense of assault, section 94-5-201, R.C.M. 1947. The jury found defendant not guilty on Count I and guilty on Count II.

Following the verdict, a presentence investigative report was filed and on December 26, 1974, a presentence hearing held. Defendant was sentenced to 20 years in the Montana State Prison. Defendant appeals from the judgment and sentence.

These issues are presented for review:

1. Whether the sentencing judge may receive and adopt information from sources other than the testimony of witnesses in open court?

2. Whether the Montana Youth Court Act applies to the facts pertaining to sentencing in this case?

3. Whether the district court erred in refusing to give defendant's proposed Instruction No. 2, covering the lesser included offense of assault?

4. Whether the district court erred in refusing to grant defendant's motion for separate trials on separate counts?

5. Whether the district court erred in refusing to grant defendant's motion to dismiss Count I at the end of the state's case.

Issue 1. Defendant contends his constitutional right to confront the witnesses against him was violated by the proceedings at the presentence hearing. United States Constitution, Sixth and Fourteenth Amendments; Article II, Section 24, 1972 Montana Constitution. In support defendant cites Kuhl v. District Court, 139 Mont. 536, 568, 366 P.2d 347.

The specific portion of the presentence hearing which defendant objects to is what occurred after defendant gave facts in mitigation of sentence. (We note here that a copy of the presentence report was furnished defendant and his counsel). At this point the trial judge said:

> "This pre-sentence investigation report is silent with respect to running off to Texas with your younger brother and some girl. I am aware of that. I am satisfied you are aware of that. But I am not satisfied that the report shows that I am aware of it. And it is the kind of a thing that I think you should have an opportunity to explain if you want to, because it certainly is all black in the Court's mind."

- 4 -

In answer defendant, represented by counsel, admitted the occurrence to be true. He made no statement in mitigation of the facts the trial judge referred to. We find no constitutional violation.

Our examination of Kuhl, in relation to present Montana statutory law and relevant federal case law, leads to the conclusion that under the circumstances of this case defendant received due process at the presentence hearing.

In Kuhl we note this statement by the Court:

"* * * However, keeping in view, as we must, the provisions of sections 94-7813 and 94-7814, supra, the question arises: Was the trial judge authorized to disregard the mandates of the two-last mentioned sections and to proceed to pass sentence upon the defendant Kuhl without giving him or his counsel an opportunity to learn or know any of the circumstances set forth in the investigator's report and without giving either the defendant or his counsel an opportunity to rebut or refute any of the representations therein contained?" (Emphasis supplied.)

Section 94-7813, R.C.M 1947, referred to in Kuhl provided that the sentencing court in its discretion could hear circumstances in aggravation or mitigation of sentence. Section 94-7814, R.C.M. 1947, provided that such "* * *circumstances must be presented by the testimony of witnesses examined in open court * * *." However, subsequent to Kuhl these statutory sections were repealed. Sections 95-2203 and 95-2204, R.C.M. 1947, now require that presentence information in mitigation or aggravation of punishment be made available to the sentencing judge where conviction may result in commitment of one year or longer. Section 95-2205, R.C.M. 1947, the present applicable statute pertaining to sources of sentencing information, reads:

"* * * If the court discloses the identity of persons who provided information, the judge may, in his discretion, allow the defendant to cross-examine those who rendered the information. * * *" (Emphasis supplied.)

There is no lack of due process where the trial judge brings to the attention of defendant facts he knows, that defendant knows he knows, and gives defendant an opportunity to explain them in a mitigation procedure, as in the instant case. Under section 95-2205, the right of cross-examination in a presentence hearing is a discretionary matter of the trial court.

Such a change in policy is reflective of the trend towards distinguishing evidential procedure at trial from that at the sentencing stage. The United States Supreme Court in Williams v. New York, 337 U.S. 241, 247, 69 S.Ct. 1079, 93 L ed 1337, 1342, stated:

> "* * * A sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant--if not essential--to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial * * *." (Emphasis supplied.)

However, this does not mean that the spirit of Kuhl is dead. A convicted defendant still has a due process guarantee against a sentence predicated on misinformation. The real question before us then is whether defendant received that protection.

Here: (1) Defendant was represented by counsel at the time the sentencing information was made known to him. Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L ed 1690; Mempa v. Rhay, 389 U.S. 128, 88 S. Ct. 254, 19 L ed 2d 336; United States v. Hone, 456 F.2d 495.

(2) He had the opportunity to rebut the information. United States v. Espinoza, 481 F.2d 553; United States v. Huff, 512 F.2d 66.

(3) Defendant chose to affirm the accuracy of the information. United States v. Horsley, 519 F.2d 1264; United States v. Brown, 479 F.2d 1170; State v. Mann, ____Mont.____, 546 P.2d 515, 33 St. Rep. 278.

Thus, any danger of utilizing misinformation in sentencing was thus averted by the trial judge.

Issue 2. Defendant contends that the source of the presentence information was his juvenile record. Since defendant had reached the age of majority, its use in sentencing without his consent or upon court petition is claimed to be prejudicial error under the terms of the Montana Youth Court Act, Title 10, Chapter 12, R.C.M. 1947.

The record, including the presentence investigative report, reveals no indication of a juvenile record on the part of defendant or that he was ever under the jurisdiction of the Youth Court. We find no merit in defendant's second issue.

Issue 3. Defendant argues the use of a weapon was not sufficiently established under Count II of the Information, thus the district court erred in not giving defendant's proposed Instruction No. 2 on the lesser included offense of assault. Specifically defendant contends that since Jesse First Raised could have been charged with accountability pursuant to sections 94-2-106 and 94-2-107, R.C.M. 1947, for his part in the Tom Miller incident, any testimony he gave as to the use of a weapon in that incident required independent corroboration under section 95-3012, R.C.M. 1947. Defendant claims the state failed to supply the

necessary corroboration. The state, while not disputing the need for corroboration due to the fact that First Raised had been granted immunity from prosecution in exchange for his testimony, takes the position that the use of a weapon by defendant against Miller was sufficiently corroborated.

The issue then becomes---What kind of evidence is sufficient to corroborate the testimony of one legally accountable? Section 95-3012, R.C.M. 1947, states:

> "A conviction cannot be had on the testimony of one responsible or legally accountable for the same offense, as defined in section 94-2-106, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the one responsible or legally accountable for the same offense, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, it merely shows the commission of the offense, or the circumstances thereof."

State v. Cobb, 76 Mont. 89, 92, 245 P. 265, has been cited many times as to the general guidelines for determining the sufficiency of evidence corroborating the testimony of one legally accountable. Though Cobb was decided under section 11988, R.C.M. 1921, since repealed, the language of the old statute is nearly identical to that of section 95-3012, R.C.M. 1947, in pertinent part. We note these guidelines from Cobb:

> "(a) The corroborating evidence may be supplied by the defendant or his witnesses.
>
> "(b) It need not be direct evidence--it may be circumstantial.
>
> " * * *
>
> "(e) It need not be sufficient to connect the defendant with commission of the crime; it is sufficient if it tends to do so.
>
> "(f) Whether the corroborating evidence tends to connect the defendant with the commission of the offense is a question of law, but the weight of the evidence * * * is a matter for the consideration of the jury." (Emphasis supplied).

The testimony concerning the assault on Miller is undisputed on these facts: First Raised's testimony that defendant for no reason struck Miller with a pulaski but fortunately Miller saw or heard the action and moved so that he was only struck in the shoulder and neck. The blow stunned Miller but he was able to recover enough to run away, chased a short time by defendant carrying the pulaski. Miller saw enough to testify it was defendant, "not the Indian" who swung on him. Defendant and First Raised immediately fled the area and went to Idaho. First Raised testified he had the pulaski on the trip to Idaho and threw it out of the car somewhere between Libby and Priest River, Idaho. We hold that such circumstantial evidence tends to connect defendant with the use of a weapon in the attack on Miller. See: State v. Spielmann, 163 Mont. 199, 516 P.2d 617; State v. Dess, 154 Mont. 231, 462 P.2d 186; 30 Am Jur 2d Evidence, § 1153. Therefore, the district court did not err in refusing defendant's proposed Instruction No. 2 on the lesser included offense of simple assault. Spielmann, supra; State v. Perry, 161 Mont. 155, 505 P.2d 113.

Issue 4. Defendant alleges the district court committed reversible error in failing to grant defendant's motion for separate trials on separate counts of aggravated assault. Though conceding that two offenses of the same class may be joined pursuant to section 95-1504(a), R.C.M. 1947, defendant notes that the statute on joinder of offenses further provides at section 95-1504(c), R.C.M. 1947:

> "If it appears that a defendant * * * is prejudiced by a joinder * * * of separate charges * * * the court may order separate trials * * * or provide any other relief as justice may require."

We find no error due to the fact defendant had separate and distinct defenses to the two counts. He plead self-defense to the first count and the jury must have believed him for at the second trial he was acquitted. As to Count II, he denied the assault alleging that First Raised was guilty.

Section 95-1504(c) is similar to Rule 14, Federal Rules of Criminal Procedure, and for this reason we have examined federal case law on the potentialities of prejudice resulting from the joinder of two crimes of the same class. Federal courts have found three basic kinds of prejudice that may occur upon the joinder of similar offenses. Wright, 1 Fed.Pract. & Proc., Criminal, § 222, p. 437.

First, the jury may consider defendant who is subject to multiple charges to be a bad man. The prejudice claimed is that the jury may tend to accumulate evidence against him until it finds him guilty of something. However, our examination of federal cases reveals that such a claim of prejudice rarely has been found sufficient to provide relief. See: Johnson v. United States, 356 F.2d 680, cert.den. 385 U.S. 857, 87 S.Ct. 105, 17 L ed 2d 84; Pummill v. United States, 297 F.2d 34. We do not find such a claim of prejudice sufficient here. The burden of showing prejudice is on defendant and here he failed to make such a showing.

Second, proof of guilt of one offense may be used to convict the defendant of another offense even though such proof may be inadmissible at a separate trial. However, where, as here, the alleged fact of the separate offenses was sufficiently distinct to allow the jurors to keep them separate in their minds, no prejudice will be found. See: Drew v. United States, 331 F.2d 85; Robinson v. United States, 459 F.2d 847; United States v. Kellerman, 432 F.2d 371.

Third, prejudice may result where the defendant wishes to testify on his own behalf on one charge but not on the other. But we note federal courts have only considered such a claim of prejudice where the alleged offenses were totally separate as to time, place and evidence. See: Cross v. United States, 335 F.2d 987; United States v. Lee, 428 F.2d 917; Holmes v. Gray, 526 F.2d 622. The factual circumstances of the instant case do not lend themselves to a claim of this type of prejudice.

For the reasons set forth, we fail to find any prejudice resulting to defendant from the joinder of the two counts of aggravated assault.

Issue 5. Defendant contends the district court erred in failing to dismiss Count I of the Information at the end of the state's case. He cites two reasons for this position. First, the evidence on Count I was insufficient to support a guilty verdict, and second, the court was under a continuing duty to protect the defendant from prejudicial joinder of separate offenses.

We simply say that in view of this Court's position on joinder of the two offenses in this case, and the fact defendant was found not guilty on Count I, no prejudice to defendant was demonstrated.

The judgment of the trial court is affirmed.

_____
Justice.

- 11 -

We Concur:

_____
Chief Justice

_____
Justices

- 12 -