No. 82-474

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

_____

THE STATE OF MONTANA,

          Plaintiff and Respondent,

   -vs-

MARTIN K. BAKER,

          Defendant and Appellant.

_____

Appeal from:  District Court of the Eighteenth Judicial District,
             In and for the County of Gallatin,
             The Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

    For Appellant:

        Goetz, Madden & Dunn; James Goetz argued, Bozeman,
        Montana

    For Respondent:

        Hon. Mike Greely, Atty. General, Helena, Montana
        Sarah Power argued, Asst. Atty. General, Helena
        A. Michael Salvagni, County Attorney, Bozeman,
        Montana

_____

                Submitted:  April 18, 1983

                  Decided:  August 2, 1983

Filed:  AUG 2 1983

*Ethel M. Harrison*

_____
                Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant, Martin K. Baker, pled guilty to two counts of sale of dangerous drugs on September 15, 1982, before the Eighteenth Judicial District Court. Following a sentencing hearing on the same day, Baker was sentenced to ten years on each count, the terms to run consecutively. Baker filed a motion for reconsideration and resentencing which was denied. In addition, the court granted the State's motion for forfeiture of defendant's vehicle. He now appeals the sentence and the forfeiture.

Defendant and two others, Mark Ellsworth and Donald Pawlack, were arrested at the Ramada Inn in Bozeman on January 13, 1982, and were charged with criminal sale of dangerous drugs. The sale had been arranged by an undercover agent who had contacted Ellsworth about buying around 100 pounds of marijuana.

The "buy" was scheduled for January 13, 1982. Agents Skuletich and Adamo checked into the Ramada Inn that morning and shortly thereafter received a call from Ellsworth. After several meetings back and forth, defendant Baker was given $29,500 in exchange for 82 pounds of marijuana. Upon his arrest, the $29,500 was recovered from Baker's boot.

During the course of the meetings, defendant snorted a line of cocaine and offered some to Agent Skuletich, who declined. That offer was the basis of the second count of criminal sale of a dangerous drug.

Other agents were in another room at the Ramada Inn listening to the transaction through electronic surveillance. It is alleged that a tape recording of the drug deal was made but never produced. Letters between defense

-2-

counsel and the prosecutor indicate that the prosecution did not have a tape of the conversation because the high level of background noise in the room which made it difficult to listen to the conversations and therefore, "there is no tape recording of the conversation in the room."

Ellsworth pled guilty to his sales charge and plea bargained by giving a statement implicating Baker as the "main man." Ellsworth was sentenced to a three-year deferred sentence with seventy days in the county jail and a $2,000 fine.

Conflicting evidence was offered at the sentencing hearing. Ellsworth testified that he had been purchasing marijuana from Baker monthly since April or May 1981; that he had obtained one, two and five pounds of marijuana from Baker; and that he had once purchased a quarter gram of cocaine from Baker. Ellsworth further testified that the county attorney's investigation had been focused on Baker and that when he had been pressured into divulging the source of his marijuana, he gave Baker's name. Agent Skuletich's testimony that Baker offered to sell him a higher grade of marijuana or the same grade at a cheaper price if Skuletich would come to his "warehouse" in Missoula corroborates Ellsworth's identification of Baker as the "main man."

Baker, however, testified that he told Skuletich he could probably buy the marijuana cheaper in Missoula because his $15 a pound traveling fee would be eliminated. He denied supplying Ellsworth with the marijuana but admitted delivering Ellsworth, Pawlack and the marijuana to Bozeman for $15 per pound of marijuana delivered and a pound of marijuana.

-3-

Originally, he was not to have been involved with the "buy." He agreed to replace Pawlack when Pawlack became too nervous to participate.

Jim Weinberg corroborated Baker's testimony. He testified that on January 6 or 7, 1982, he was at Baker's house when Ellsworth came over and offered to sell marijuana to them and inquired if either of them would give him a ride to Bozeman in the near future. Joe Staaks also testified that Ellsworth had offered to sell large quantities of marijuana to both he and Baker.

The evidence further established that this was Baker's first offense; that he had been a professor at Montana State University and the University of Montana; that he had taken students on a field trip to Mexico; that he presently owned a rug and textile business in Missoula; and that his business required several trips to Mexico for supplies.

At the end of the sentencing hearing, the judge immediately sentenced Baker, stating:

> "I am convinced that you are an operator in drugs and that $29,000 worth of drugs may not have been routine but that you've done it for a long period of time. And the abuse that comes and that you are a danger to the community and to the state. The self-abuse that comes from the use of drugs is incalculable. I don't think we can stem it but when we get someone that deals in this amount of drugs, we can certainly sentence them and I--he is remanded to the custody of the Sheriff who isn't here."

A motion for reconsideration was immediately filed. At the hearing on that motion, the sentencing judge admitted that he had received an anonymous phone call on Baker's behalf prior to the sentencing and that he then made a single phone call to the former department head of the

-4-

Sociology Department to determine Baker's length of tenure at MSU. Prior evidence had been presented that indicated Baker had been at MSU only one quarter. The phone caller stated: "I'm just a faculty member and I don't want to reveal my identity, but, this man is a good man. He's never been in trouble before and he's been here on campus for a long time teaching . . ." The professor told the judge that Baker had taught one quarter, that he had taken a number of tours in Mexico, and that he had one youngster who was in trouble with marijuana in Mexico. The judge said, "that can happen to anybody," and hung up. He also considered a letter sent on behalf of Baker. At the sentencing hearing, the judge personally questioned Baker at length regarding the student trips to Mexico. The motion for reconsideration was subsequently denied, and the forfeiture was granted. Baker presents three issues on appeal:

1. Whether resentencing is required because the judge personally obtained information off-the-record;

2. Whether the county attorney withheld a tape recording to defendant's prejudice; and,

3. Whether forfeiture of defendant's van was properly ordered.

Defendant argues that the out-of-court contact made by the sentencing judge invalidated the sentencing procedure, that the record does not support the findings and conclusions of the District Court, that the sentence is grossly disproportionate to the offenses, and that the judge's entry of the findings and conclusions some thirty days after sentencing amounts to a "post hoc rationalization" of his "earlier, hastily-reached" decision. We agree that the

out-of-court contact made by the sentencing judge invalidated the sentencing procedure, and we remand for resentencing under a different District Court judge.

This Court has long recognized that a sentencing judge cannot sentence on the basis of private, out-of-court information, communications or investigation. Kuhl v. District Court (1961), 139 Mont. 536, 366 P.2d 347; State v. Simtob (1969), 154 Mont. 286, 462 P.2d 873; State v. Stewart (1977), 175 Mont. 286, 573 P.2d 1138; State ex rel. Greely v. District Court (1979), 180 Mont. 317, 590 P.2d 1104.

The trial judge in Stewart personally interviewed several persons who had testified at trial at undisclosed locations, off the record, and without notice to defendant of the court's intent to conduct the interviews. Therefore, this Court distinguished State v. Orsborn (1976), 170 Mont. 480, 555 P.2d 509, where the Court had found that if a defendant was protected against a sentence predicated upon misinformation, no due process violation occurred when presentence information came from a source not subject to cross-examination in court. In Orsborn, the defendant was represented by counsel, had the opportunity to rebut the information and chose to affirm the information. In Stewart, we recognized that the trial judge had become intimately involved in the presentence fact-gathering process and held that where the judge becomes a fact gatherer, as well as a fact finder, he subjects the defendant to an impossible burden. The proper course is for the sentencing judge to delegate investigation responsibilities to other officials.

In Simtob, nothing in the record supported the Dis-

trict Court's finding that "this is not [defendant's] first experience in this sort of thing." This Court stated that "the discretion of the sentencing judge must be based on his view of the evidence presented in open court . . . and may not be exercised on the basis of unsworn representations privately received by the sentencing judge."

Finally, in Kuhl, the sentencing judge held private conference in chambers with unspecified parties, all in the absence of both defendant and his counsel.

Here, it is apparent that the private out-of-court contact by the sentencing judge affected the sentencing process. During the sentencing hearing, the judge personally questioned Baker at length about the trip he took to Mexico with students from Montana State University and exhibited a keen interest in that trip:

"Q. [BY THE COURT]: Did you take a tour of students when you were here in 1980 at Montana State College? A. No sir, I didn't.

"Q. You didn't take any then? A. No.

"Q. You weren't in Mexico at all when you were -- while -- during that summer or just before that? A. I taught here the spring of '79.

"Q. I don't know -- A. No, I didn't -- you were --

"Q. You were in the sociology department? A. Yes sir I was. Those students then were to return to the United States on their own just as they were -- just as they got to Mexico on their own.

"Q. Did any of them get in jail? A. None of them ended up in --

"Q. For using marijuana? A. No, none of them did.

"Q. Not a one? A. One of them, a woman of 27 or 28 years old, the woman was found in -- found to be mentally -- she

was running around somewhere in Mexico. She was unstable and her parents went to get her but it turned out after a lot of upset by the parents that the woman had a history of mental illness that was not disclosed to us prior --

"Q. Was she put in jail because of drugs? I don't care about her mental. A. No sir, not that I know.

"Q. You were not -- A. I was never.

"Q. You were in charge of this group? A. This happened subsequent to the quarter.

"Q. Oh, I see. All right. A. She was down there after the quarter had ended."

The private out-of-court contact affected defendant's substantial right to due process during his sentencing. We remand for resentencing.

Defendant next charges prejudice based upon the failure of the State to produce a tape recording allegedly made of the conversation which took place in the Ramada Inn during the drug transaction. Baker argues that while agent Skuletich testified that Baker had claimed to have a "warehouse" in Missoula, the tape recording would tend to corroborate his claim that he never mentioned a "warehouse." Therefore, the recording would resolve the conflict in testimony and could prove to be exculpatory evidence. This argument is without merit.

Where there is no indication that the defendant made any written motion to the District Court to require production of such a tape pursuant to sections 46-15-302 or 46-15-311, MCA, the issue is not properly before this Court. State v. Hansen (1981), ____ Mont. ____, 633 P.2d 1202, 38 St.Rep. 1541. Aside from this procedural defect, the record indicates there is no tape recording of the conversation.

-8-

In response to defense counsel's request for the production
of the tape, the prosecutor sent the following response:

> "You are correct in that there were law
> enforcement officers at the Ramada Inn in
> an adjacent room to where your client
> dealt the drugs to the agent of the
> attorney general's office. Officers Green
> and Tymrak of the Bozeman Police Depart-
> ment did listen to the conversation that
> took place in the room between Baker,
> Ellsworth and the State's agent. However,
> we have no tape of the conversation. The
> officers tell me that there was a lot of
> extra noise in the room and that it was
> difficult for them to listen to the con-
> versations in the room, therefore, there
> is no tape recording of the conversation
> in the room. I am sure that Officers
> Green and Tymrak will be more than happy
> to relay to you what they can recall of
> the conversation that took place in the
> room . . ." (Emphasis added.)

There is no duty on the part of the prosecution to produce
that which does not exist. Since there is no tape, garbled
or otherwise, defendant's claim of prejudice from nonproduc-
tion thereof is without merit.

Defendant's final argument is that forfeiture of his
vehicle pursuant to sections 44-12-201 through -203, MCA, is
unconstitutional. He contends that the statutes' require-
ment that he file a verified answer on the forfeiture within
twenty days after the State gives notice of intent to insti-
tute forfeiture proceedings forces him to give evidence
which can be used against himself or forces him to forfeit
his property. The forfeiture proceeding requires: (1)
institution of forfeiture proceedings within forty-five days
of seizure of the property; (2) filing of a verified answer
by defendant within twenty days; and, (3) hearing not less
than thirty days after the verified answer is filed. Baker
contends that this conflicts with the due process rights of
a criminal defendant to remain silent during the pendency of

the criminal proceeding since the statute requires the proceeding to be completed long before most criminal cases would be tried. This argument fails.

Generally, forfeitures of property such as the van in the instant case are predicated upon the legal fiction that the State is proceeding against the vehicle through an _in rem_ proceeding because the vehicle itself is guilty of being used in drug trafficking, bootlegging, or other criminal activity. The Palmyra (1827), 12 Wheat (U.S.) 1, 6 L.Ed. 531, People v. One 1933 Plymouth Sedan Deluxe Auto. (1939), 13 Cal.2d 565, 90 P.2d 799. The proceeding is considered civil rather than criminal and only a civil burden of proof need be established by the State, even though the effect of the statute's operation is to deprive a defendant of his property based upon its probable use in criminal activity. United States v. One 1970 Pontiac 670, 2-Door Hardtop (9th Cir. 1976), 529 F.2d 65.

Statutes establishing forfeiture procedures generally attempt to balance the right of a property owner to a hearing after seizure "at a meaningful time and in a meaningful manner" with the privilege against self-incrimination. Once probable cause is established that the vehicle was used in criminal activity, some courts have permitted immediate seizure without notice and hearing as long as notice and hearing in a meaningful time and manner is then provided. United States v. Kimak (9th Cir. 1980), 624 F.2d 903.

For discussions that favor leaving the various application of alternatives under the statute with the district court, see, United States v. U.S. Currency (6th Cir. 1980), 626 F.2d 11, cert. denied, 449 U.S. 993; United States v.

$3,799.00 in U. S. Currency (10th Cir. 1982), 684 F.2d 674. See also, Annot., "Forfeiture of property for unlawful use before trial of individual offender," 3 ALR2d 738; Annot., "Relief to owner of motor vehicle subject to state forfeiture for use in violation of narcotic laws," 50 ALR3d 172; Annot., "Forfeiture of personal property used in illegal manufacture, processing, or sale of controlled substances under §511 of Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 USCA §881)," 59 A.L.R.Fed. 765. Courts have also held that forfeiture statutes should be strictly complied with and have forfeited the property where a defendant failed to prove a verified answer within the statutory period or to otherwise comply with the statute. Matter of 1969 Ford Truck, Etc. (1979), 122 Ariz. 442, 595 P.2d 674.

Here, the statutes require a notice of forfeiture within forty-five days of seizure of the property. Defendant must file a verified answer within twenty days of that. The proceeding must then be set for hearing "not less than 30 days" after the answer is filed.

We hold that these statutes are not unconstitutional on their face. Nor are they unconstitutional as applied in this case. The statutes afford due process through notice and hearing to the property owner whose possession has been seized. The statutes do not require that a defendant incriminate himself in his verified answer. Nor did defendant do so here. Baker filed a general denial. He admitted ownership of the vehicle but refused to respond to the allegations that it had been used in criminal activity.

Nor was it necessary to hold forfeiture proceedings

-11-

prior to Baker's trial. The proceedings must be set for hearing "not less than" thirty days after the answer. While a forfeiture hearing potentially could be set thirty or more days after the verified answer was filed and still be held before a defendant's trial on the criminal matter, such was not the case here. Hearing on the forfeiture was not held until after defendant entered his plea of guilty and had been sentenced. We will not hold a statute unconstitutional on the premise that it might be applied at some future time in a manner requiring a defendant to incriminate himself. We leave application of the statute's alternatives to the District Courts and will review their actions as necessary. United States v. U.S. Currency, supra. We hold the forfeiture of the van proper in this case.

Conviction affirmed but cause remanded for resentencing.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

Mr. Justice John C. Sheehy:

I concur. The record does not show a tape existed.

_____
Justice

-12-

Mr. Justice Frank B. Morrison, Jr., concurs in part and dissents in part as follows:

I concur with the majority in vacating the sentence and remanding for resentencing. However, I dissent from the majority holding with respect to the tape recording.

The majority opinion quotes the County Attorney's letter indicating that no tape was made of the conversation in the motel. I believe that this is refuted by the testimony of Agent Skuletich given at the sentencing hearing. Agent Skuletich testified as follows:

"Q. You informed me that there was a tape recorder?

A. I didn't say there was, I said there was a microphone in the room and that the tape recorder itself was located two rooms away.

Q. Didn't you indicate there was a tape recorder in the drawer

A. No, no I did not.

Q. But, there was a microphone in the room?

A. Yes.

Q. Where was the microphone?

A. It was under the bed.

Q. After you arrested Mr. Baker, you indicated rather gleefully that, 'We have this on tape'?

A. I don't recall indicating that.

Q. Did you say anything about it, a tape, at that time?

A. I don't recall saying anything about a tape.

Q. You could have but you just don't recall?

A. I don't recall. ***

Q. Now, where is the tape of the conversation now?

A. I have no idea where it's at. ***

Q. Well, you don't know what happened to the tape, I take it?

A. I never did see the tape. It was in the -- the instrument that was used to record it was in another room. I never seen the tape."

-13-

The testimony above-quoted indicates that a tape recording was made of the conversation. Apparently the County Attorney felt the conversations on the tape were garbled. However, production of the tape should be ordered so that defense counsel is permitted to listen to the tape and have the opportunity to have the tape examined by an expert.

I should add that counsel for the prosecution was questioned at the time of oral argument concerning the apparent conflict between the County Attorney's letter and the testimony given at the sentencing hearing. The responses reinforced my feeling that a tape does exist but that the position of the County Attorney's office was that the voices were inaudible. Under these circumstances the defendant must be given his opportunity to have the tape listened to by a speech pathologist or other expert trained in unscrambling garbled language.

Justice Frank B. Morrison, Jr.

Mr. Justice Daniel J. Shea:

I concur with Mr. Justice Morrison.

Justice

-14-

Mr. Justice Fred J. Weber respectfully concurs and dissents as follows:

I concur in the conclusions of the majority opinion with regard to the tape recording and the forfeiture of the defendant's van. I respectfully dissent from the conclusion on the part of the majority that the private out-of-court contact affected the defendant's substantial right to due process during his sentencing and therefore constituted a basis for remanding for resentencing.

The majority cites several Montana cases as authority for the conclusion that a sentencing judge cannot sentence on the basis of private, out-of-court information, communications or investigation. The majority does not distinguish between the various cases and the statutes which have been substantially changed over the years.

As pointed out by this Court in State v. Orsborn (1976), 170 Mont. 480, 555 P.2d 509, in Kuhl this Court was required to follow the provisions of sections 94-7813 and 7814 R.C.M. 1947 which in substance provided that no affidavit, testimony or representation could be received by the court in aggravation or mitigation of punishment unless these matters had been presented "by the testimony of witnesses examined in open court." This Court concluded that the district judge therefore could not consider reports from the police department, sheriff's records, or other sources because they had not been presented by the testimony of witnesses in open court. However, that rule no longer is appropriate. As pointed out in Orsborn, subsequent to Kuhl these statutory provisions were repealed. The provisions in effect under Orsborn were sections 95-2203, 2204 and 2205, R.C.M. 1947 (now sections 46-18-111, 112, and 113, MCA). The statutes

-15-

disclose a distinct change in policy.    Section 46-18-113,

MCA, in pertinent part states:

> "The judge may, <u>in his discretion</u>, make the
> investigative report or parts of it available to
> the defendants or others, while concealing the
> identity of persons who provided confidential
> information.    If the court discloses the identity
> of persons who provided information, the judge <u>may</u>,
> <u>in his discretion</u>, allow the defendant to
> cross-examine those who rendered the information."
> (Emphasis added)

Under the old statutes as interpreted in <u>Kuhl</u>, testimony was

required by witnesses in open court which guaranteed the

right of cross-examination as to all elements of evidence

received in either aggravation or mitigation of punishment.

In contrast, as enacted in 1967, the present law gives the

district judge the discretion to refuse to make the

investigative report available and to conceal or disclose

identity of persons providing confidential information.    In

addition, section 46-18-113, MCA, provides that the judge

may, in his discretion, allow cross-examination by the

defendant if the court has disclosed the identity of persons

who provided information.    There is no specific right of

cross-examination under other circumstances.

In making a similar analysis, this Court in <u>Orsborn</u>

referred to <u>Kuhl</u> and stated:

> "However, this does not mean that the spirit of
> <u>Kuhl</u> is dead.    A convicted defendant still has a
> due process guarantee against a sentence predicated
> on misinformation.    The real question before us is
> whether defendant received that protection."

The court then concluded in <u>Orsborn</u> that the defendant was

represented by counsel, had the opportunity to rebut the

information and chose to affirm the information, and thus any

danger of utilizing this information in sentencing was

averted.    I would apply the Orsborn test to the present case.

Here there initially was an anonymous call from a person

speaking favorably of the defendant.    Thereafter the trial

-16-

judge called a university professor of his acquaintance. The details of that telephone conversation with the university professor were disclosed by the trial judge in open court. Following that disclosure, the counsel for defendant had ample opportunity to question the judge and to present any explanatory information which he deemed to be advisable. Note that the information obtained by the judge was not actually significant. At most, as pointed out in the majority opinion, the information may have triggered questions about the defendant's trip to Mexico. While such questions may have been triggered, no misinformation or prejudicial information is shown to have been obtained. As stated in Orsborn, the convicted defendant has a due process guarantee against a sentence predicated on misinformation. No misinformation has been shown here.

I agree with the conclusion of the majority that the proper course is for a sentencing judge to delegate investigation responsibilities to others. Even the trial judge here admitted that his single phone call may have been inadvisable.

The majority has concluded that the private out-of-court telephone contact affected defendant's substantial right to due process during the sentencing. I am unable to see how that conclusion is substantiated by the facts.

I believe the majority is setting up a rule which is not consistent with the procedure provided by the legislature in section 46-18-113, MCA, where the judge may choose not to disclose parts of an investigation report to the defendant and may also choose not to allow cross-examination.

I would hold here that no misinformation was received and that in fact no information prejudicial to the defendant was presented by the telephone call and that the due process

-17-

guarantee described in <u>Orsborn</u> was afforded the defendant. I would affirm the District Court.

_____
Justice