# STATE OF MONTANA,
## Plaintiff and Respondent,
### v.
# RON McLEOD,
## Defendant and Appellant.

No. 01-140.
Submitted on Briefs November 29, 2001.
Decided December 30, 2002.
2002 MT 348.
313 Mont. 358.
61 P.3d 126.

For Appellant: **Chad Wright**, Appellate Defender Office, Helena.

For Respondent: **Hon. Mike McGrath**, Attorney General; **Micheal S. Wellenstein**, Assistant Attorney General, **Stephanie Shanler**, Legal Intern Helena; **Dennis Paxinos**, Yellowstone County Attorney, Billings.

JUSTICE RICE delivered the Opinion of the Court.

¶1 The defendant, Ron McLeod (McLeod), pled guilty to one count of criminal possession of dangerous drugs, a felony in violation of § 45-9-102, MCA, and one count of criminal possession of drug paraphernalia, a misdemeanor in violation of § 45-10-103, MCA. The Montana Thirteenth Judicial District Court, Yellowstone County, sentenced McLeod to the maximum five-year sentence and $1,000 fine on count I and a concurrent six-month sentence on count II. McLeod now challenges the legality of the sentence. We affirm in part, reverse in part, and remand for further proceedings.

¶2 We rephrase the issues on appeal as follows:

¶3 **1. Should this Court reverse and remand McLeod's sentence because the District Court relied on incorrect information in the pre-sentence investigation?**

¶4  **2. Did the District Court fail to make the required statutory findings regarding McLeod's ability to pay the $1,000 fine?**

*BACKGROUND*

¶5  The facts in this case are undisputed. On April 19, 1999, agents of the Montana Division of Criminal Investigation and the United States Department of Justice, Drug Enforcement Administration, learned that McLeod was an occupant of a motel in Billings, Montana, and that he had outstanding felony arrest warrants.

¶6  Early the next morning, agents arrested McLeod as he was leaving the motel and performed a search of McLeod's person incident to arrest. During the search, a state officer recovered from McLeod's front left pants' pocket a glass pipe used for smoking methamphetamine and a glass vile containing a rock-like substance. The substance was submitted to the Montana Forensic Sciences Division for chemical analysis and the lab confirmed that the rock-like substance was methamphetamine. At his arraignment on August 12, 1999, McLeod pled not guilty to both charges.

¶7  Prior to his arrest on the outstanding warrants, McLeod had three previous felony convictions. Two of the convictions were for criminal possession of dangerous drugs and one was for conspiracy and possession with intent to distribute. The current offense is McLeod's fourth felony offense.

¶8  On March 14, 2000, the District Court granted McLeod's motion to withdraw his plea. McLeod then entered into a non-binding plea agreement with the State and, in exchange for the State withdrawing its notice of persistent felony offender and agreeing to follow the sentencing recommendation in the pre-sentence investigation report (PSI), McLeod changed his plea to guilty on both counts. The District Court accepted McLeod's guilty plea.

¶9  The Criminal History section of the PSI indicated that McLeod had two prior felonies for criminal possession of dangerous drugs and one previous felony for conspiracy to possess dangerous drugs with intent to distribute. However, under the Criminal History portion of the Comments section of the PSI, the PSI investigator incorrectly concluded that this current drug charge will be McLeod's fifth felony, whereas the Criminal History section of the PSI correctly reflected that this was McLeod's fourth felony. The PSI was, therefore, internally inconsistent with regard to the number of McLeod's previous felony offenses.

¶10  The PSI recommended that McLeod be sentenced to the Montana

State Prison for a period of five years and be fined an amount of $1,000 based on his history of drug related felonies and misdemeanors over the course of a twenty-five year period, including three misdemeanors committed after the current offense. During the sentencing hearing, the District Court also stated, apparently relying on the incorrect section of the PSI, that this drug offense was McLeod's fifth felony. Neither McLeod nor his counsel, however, brought the discrepancy in the PSI to the District Court's attention.

¶11 The District Court sentenced McLeod to the maximum five-year sentence and fined him $1,000 under § 45-9-102, MCA. The District Court imposed an additional six-month sentence for count II, criminal possession of drug paraphernalia with intent to distribute. Section 45-10-103, MCA. McLeod now challenges the legality of his sentence.

## STANDARD OF REVIEW

¶12 This Court reviews criminal sentences for legality only, that is, whether the sentence is within the parameters provided by statute. *State v. Montoya*, 1999 MT 180, ¶ 15, 295 Mont. 288, ¶ 15, 983 P.2d 937, ¶ 15. In a direct appeal, the defendant is limited to those issues that were properly preserved in the district court and to allegations that the sentence is illegal or exceeds statutory mandates. Section 46-20-104, MCA; *State v. Lafley*, 1998 MT 21, ¶ 26, 287 Mont. 276, ¶ 26, 954 P.2d 1112, ¶ 26 (citation omitted). We have held that a sentence is not illegal when it is within the parameters provided by statute. *Lafley*, ¶ 26; *State v. Gunderson* (1997), 282 Mont. 183, 187, 936 P.2d 804, 806; *State v. Goulet* (1996), 277 Mont. 308, 921 P.2d 1245; *State v. Nelson* (1995), 274 Mont. 11, 906 P.2d 663.

## DISCUSSION

¶13 **1. Should this Court reverse and remand McLeod's sentence because the District Court relied on incorrect information in the pre-sentence investigation?**

¶14 The facts clearly demonstrate that McLeod extensively reviewed the PSI prior to the sentencing hearing and that he and his counsel were afforded an opportunity to discuss the content of the PSI prior to the hearing. It is also clear that neither objected to or challenged the content of the PSI that McLeod now challenges on appeal. At the sentencing hearing, counsel for McLeod stated, "I can inform the Court that we have been made available a presentence report in this case. Mr. McLeod has reviewed it extensively. We have talked about it to some extent. I see no cause not to go to sentencing at this time, Your Honor." At the court's inquiry as to whether changes should be made

to the report, defense counsel responded:

Of relative concern to us was the criminal history, Your Honor. There is some extensive history. Mr. McLeod is not objecting to the representations made in the PSI relative to the criminal history. We would just add ... that Mr. McLeod has had no previous violations since 1993, almost seven years. But for that little discretion, Your Honor, we have no substantial changes or corrections or additions to the PSI.

¶15 Although neither McLeod nor his counsel objected to the content of the PSI relative to its representation of McLeod's criminal history, we initially conclude that this challenge is properly before this Court, as McLeod challenges only the legal validity of the sentence. *See State v. Lenihan* (1979), 184 Mont. 338, 343, 602 P.2d 997, 1000 (holding that the better rule is to allow appellate review of any sentence imposed in a criminal case, if it is alleged that such sentence is illegal or exceeds statutory mandates, even if no objection is made at the time of sentencing); *accord State v. Brister*, 2002 MT 13, ¶ 16, 308 Mont. 154, ¶ 16, 41 P.3d 314, ¶ 16.

¶16 ■ While McLeod did not raise the issue in the District Court, McLeod now alleges that his sentence is illegal because it was predicated on misinformation about his criminal history, thus violating his due process rights in the Fourteenth Amendment of the United States Constitution and Article II, Section 17, of the Montana Constitution. This Court has previously held that a convicted defendant has a due process guarantee against a sentence predicated on misinformation. *See State v. Orsborn* (1976), 170 Mont. 480, 486, 555 P.2d 509, 513.

¶17 McLeod argues that his situation is similar to that of the petitioner in *Bauer v. State*, 1999 MT 185, 295 Mont. 306, 983 P.2d 955. When sentencing the defendant in *Bauer*, the Blaine County District Court relied on information in the PSI that Bauer had been convicted of two previous felony convictions in Silver Bow County, convictions from which Bauer was later exonerated. Bauer thereafter filed a petition for post-conviction relief in the Blaine County District Court alleging that his due process rights had been violated when the court imposed Bauer's sentence in reliance on the once valid, but now invalid, previous felony convictions. *Bauer*, ¶ 14.

¶18 The District Court denied Bauer's petition and we reversed, holding that under the due process guarantee, "every person must be given an opportunity to explain, argue, and rebut any information – including presentencing information – that may lead to a deprivation of life, liberty, or property." *Bauer*, ¶ 22 (citation omitted). At the time

that the Blaine County District Court sentenced Bauer, the evidence of Bauer's prior Silver Bow County convictions did not constitute materially false information. "When Bauer's prior Silver Bow County convictions were vacated subsequent to the imposition of his Blaine County sentences, however, what was correct information at the time of sentencing became misinformation after the fact." *Bauer*, ¶ 28.

¶19 In deciding *Bauer*, this Court relied on the two United States Supreme Court decisions of *Townsend v. Burke* (1948), 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690, and *United States v. Tucker* (1972), 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592, cases also cited to by McLeod. In *Townsend* the Supreme Court reversed the lower court's sentence where, at sentencing, the defendant did not have counsel and the lower court explicitly relied on three charges against the defendant for which the charges had been dismissed or the defendant had been found not guilty, and where the lower court did not give the defendant an opportunity to review or object to consideration of previous crimes. The *Townsend* Court stated: "It is not the duration or severity of this sentence that renders it constitutionally invalid; it is the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by services which counsel would provide, that renders the proceedings lacking in due process." *Townsend*, 334 U.S. at 741, 68 S.Ct. at 1255, 92 L.Ed. at 1693.

¶20 In *Tucker*, the Supreme Court reversed the lower court's sentence because its sentencing decision was partly based upon two previous convictions which were later, subsequent to the defendant's sentencing, held to be unconstitutional. "For we deal here, not with a sentence imposed in the informed discretion of a trial judge, but with a sentence founded at least in part upon misinformation of constitutional magnitude." *Tucker*, 404 U.S. at 447, 92 S.Ct. at 591-92, 30 L.Ed.2d at 596.

¶21 ■ The common due process deficiency between *Tucker* and *Bauer* is that neither defendant could possibly have been afforded the opportunity to object to the consideration of their previous convictions at the time of sentencing because their previous convictions remained valid at the time of sentencing. Those cases are thus easily distinguished from the present situation because McLeod and his counsel were given ample time to review and discuss the PSI prior to the sentencing hearing, testified that they had reviewed and discussed the PSI, and were given more than one opportunity at the hearing to object to any information contained in the PSI. No further due process can be required of the sentencing court.

¶22 Likewise, in *Townsend* the defendant was given notice of previous crimes at his sentencing hearing via a recital by an officer in court, a recital that included three previous charges for which the defendant had not been convicted. The defendant did not have an opportunity to review the alleged previous convictions prior to the hearing, did not have counsel to aid him in challenging the materially false information, and was not given an opportunity by the sentencing court to object to the materially false information in the manner required by due process. The *Townsend* Court stated that "the disadvantage from the absence of counsel, when aggravated by circumstances showing that it resulted in the prisoner actually being taken advantage of, or prejudiced, does make out a case of violation of due process." *Townsend*, 334 U.S. at 739, 68 S.Ct. at 1254, 92 L.Ed. at 1692-93.

¶23 Relying, in part, on *Townsend*, this Court held in *State v. Orsborn* that due process was provided to the defendant at his sentencing hearing even when the district court referred to facts outside the PSI. We held that due process was not offended because of three considerations: (1) the defendant was represented by counsel at the time the sentencing information (i.e., the alleged misinformation) was made known to him; (2) the defendant was provided an opportunity to rebut that information; and (3) the defendant, rather than rebutting the information, chose to affirm its accuracy. *Orsborn*, 170 Mont. at 486, 555 P.2d at 513; *accord Bauer*, ¶ 23.

¶24 In the present case, the District Court did not consider any information outside the PSI and McLeod was represented by counsel at the sentencing hearing. Both he and his counsel not only had an opportunity to review the PSI prior to the hearing, but McLeod had reviewed it "extensively" and also availed himself of the opportunity to discuss the PSI with his counsel prior to the hearing. At the hearing, the court inquired as to whether any changes should be made to the PSI, and McLeod's counsel responded by affirming the accuracy of the information, stating, "Mr. McLeod is not objecting to the representations made in the PSI relative to the criminal history .... [W]e have no substantial changes or corrections or additions to the PSI." Later in the hearing, the court, apparently referring to the erroneous information in the Criminal History section of the PSI, stated incorrectly that this was McLeod's fifth felony rather than his fourth. Again, no objection was made by either McLeod or his counsel.

¶25 ▮ As McLeod was given proper notice of the information in the PSI, availed himself of the opportunity to extensively review it, was represented by counsel at the time that the PSI information was made known to him and reviewed that information with counsel, was given

the opportunity, more than once, at the sentencing hearing to rebut the information, but instead chose to affirm the accuracy of the information contained in the PSI, we conclude that, under our holding in *Orsborn*, McLeod was afforded the process due to a criminal defendant at sentencing.

¶26 ▮Under these circumstances, we hold that McLeod's affirmation of the correctness of the information in the PSI constituted a waiver, under *Orsborn*, of his due process challenge. The District Court provided the due process necessary to avert the utilization of misinformation in sentencing and the sentence imposed does not exceed statutory limitations. *See State v. Hubbel*, 2001 MT 31, ¶ 25, 304 Mont. 184, ¶ 25, 20 P.3d 111, ¶ 25 ("Where the sentence is within the statutory parameters established by the legislature, this Court will generally affirm it.") (citation omitted). McLeod received the required due process and proceeded through sentencing without objection. In this circumstance, we cannot predicate error on the basis of a defendant's failure to object when given full opportunity to do so. The District Court is affirmed accordingly.

¶27 **2. Did the District Court fail to make the required statutory findings regarding McLeod's ability to pay the $1,000 fine?**

¶28 McLeod challenges the legality of the $1,000 fine imposed by the District Court, arguing that the court failed to comply with its statutory duty under § 46-18-231, MCA (1997), to inquire into McLeod's ability to pay the fine and the nature of the burden that payment of the fine would impose. McLeod argues that the court was required to consider the PSI prior to imposing sentence so that the judge would have had information regarding McLeod's finances. Upon review of the PSI, McLeod contends, the court "should have realized" that McLeod's financial resources were meager.

¶29 Section 46-18-231(3), MCA (1997),[1] provides:

The court may not may not sentence a defendant to pay a fine unless the defendant is or will be able to pay the fine. In determining the amount and method of payment, the court shall take into account the nature of the crime committed, the financial resources of the defendant, and the nature of the burden that payment of the fine will impose.

---

[1] Both parties in this case cite to the 1999 version of the Montana Code. Although McLeod was not sentenced until January 2001, he was charged with offenses under the 1997 code. Thus, the sentencing statutes in the 1997 code remained applicable at the time of McLeod's sentencing.

The statute requires that a district court make an inquiry into the significant question of whether a defendant's financial resources provide the defendant with the ability to pay the fine. *See Hubbel*, ¶ 35. With no provision for a payment schedule, McLeod notes that the $1,000 would become due immediately upon parole pursuant to § 46-18-234, MCA (1997). That statute provides:

> Whenever a defendant is sentenced to pay a fine or costs under 46-18-231 or 46-18-232, the court may grant permission for payment to be made within a specified period of time or in specified installments. If no such permission is included in the sentence, the payment is due immediately.

McLeod argues that such payment would conflict with his court-ordered child support payment and that making the choice between making one payment or the other would amount to a "Catch-22," as missing either payment could lead to his re-arrest.

¶30 In *Hubbel*, we reversed the district court where it imposed on the defendant the burden of paying the costs of his three separate court-appointed counsel through two trials and an appeal. We held that, although it is clear that the district court had the statutory authority to order Hubbel to pay the costs of his court-appointed counsel, that the district court also had a statutory duty, pursuant to § 46-8-113(3), MCA, to inquire into the ability of Hubble to pay the costs of his representation. The district court failed to inquire into the defendant's financial ability to pay and into the burden that the fine would impose. We reversed and remanded for an appropriate determination. *Hubbel*, ¶ 37.

¶31 We likewise reversed the district court in *State v. Farrell* (1984), 207 Mont. 483, 676 P.2d 168, where the court imposed on the defendant the payment of restitution, court costs and attorney fees and where nothing in the transcript or record indicated how or if the court took cognizance of the defendant's financial resources and the burden that the imposition of costs would impose on him. *Farrell*, 207 Mont. at 492, 676 P.2d at 173.

¶32 Upon the acceptance of a guilty plea to one or more felony offenses, the district court is required to order the completion of a PSI and is required to consider the PSI prior to sentencing. Section 46-18-111(1), MCA. In its judgment, the District Court stated: "The Court considered the contents of the presentence report, the clarifications at the sentencing hearing made thereto and the author's recommendations contained therein." The PSI recommended a fine of $1,000 and the District Court's sentence conformed to this recommendation. The content of the PSI reflected that McLeod earned

approximately $600 per month as a self-employed carpenter, that his only major asset was a motorcycle valued at approximately $2,500 and that he owed approximately $5,700 in back child support, his only major debt.

¶33 While the judgment reflects that the sentencing judge considered the PSI as required, our review of the PSI reveals that, while it contains the above financial information, it nowhere discusses whether McLeod will or will not be able to pay the fine, nor does it take into account the nature of the burden that payment of the fine will impose on McLeod. The State contends, however, that it is evident from the sentencing transcript that the District Court did take into account the nature of the current crime as well as McLeod's criminal history. The State cites to the following portion of the sentencing transcript wherein the District Court stated:

> I hope you can convince yourself that you have had enough of this. You have had enough of being in jail and prison, because if you go back to doing the drugs, you're going to be back in front of me or somebody else, and with this history, you're going to be back in prison. All there is to it. The choice is yours. I wish you the best. That is the sentence of the court.

¶34 We find the State's argument unconvincing. The above portion of the transcript does not demonstrate a serious inquiry or separate determination, as required by § 46-18-231(3), MCA, into the ability of McLeod to pay the fine nor inquiry into his financial resources or the nature of the burden that the $1,000 fine would impose.

¶35 ▇While § 46-18-234, MCA, does not require the sentencing judge to specify a period of time for payment of the fine or to specify whether the payment is to be made in installments, § 46-18-231(3), MCA, does require, prior to sentencing the defendant, that the sentencing judge consider whether the defendant will or will not be able to pay the fine and further requires that, in making such determination, the sentencing judge shall take into account the financial resources of the defendant and the nature of the burden that payment of the fine will impose. The record reflects that the sentencing judge did not make such a determination in this matter. We therefore reverse the imposition of the fine, and remand this case back to the District Court for a determination of whether McLeod has the ability to pay a fine.

¶36 Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.

CHIEF JUSTICE GRAY, JUSTICES REGNIER, NELSON and TRIEWEILER concur.