# STATE OF MONTANA,
## Plaintiff and Respondent,
### v.
# LAWRENCE SHANE LAFLEY,
## Defendant and Appellant.

No. 97-196.
Submitted on Briefs January 15, 1998.
Decided February 10, 1998.
1998 MT 21.
55 St.Rep. 76.
287 Mont. 276.
954 P.2d 1112.

For Appellant: **Deirdre Caughlan**, Attorney at Law, Butte.

For Respondent: **Honorable Joseph P. Mazurek**, Attorney General; **Micheal Wellenstein**, Assistant Attorney General, Helena; **Robert M. McCarthy**, Silver Bow County Attorney; **Eileen Joyce-Smith**, Deputy County Attorney, Butte.

JUSTICE LEAPHART delivered the Opinion of the Court.

¶1   Appellant Shane Lafley (Lafley) appeals from the January 9, 1997 judgment and order of the Second Judicial District Court, Silver Bow County. Lafley was convicted of felony assault and sentenced to 10 years in the Montana State Prison plus 2 years for the use of a dangerous weapon pursuant to § 46-18-221(1), MCA. We affirm.

¶2   Lafley raises the following issues on appeal:

¶3   1. Did Lafley establish the elements of the defense of justifiable use of force?

¶4   2. Did the District Court violate the law by sentencing Lafley to an additional 2 years imprisonment for his use of a dangerous weapon in the commission of the crime?

Factual and Procedural Background

¶5   On June 15, 1996, Gerald Carey (Carey) and his wife Chris met several friends, including Dan Lehti (Lehti) and Don Leverton (Leverton), at the Arizona Bar in Butte, Montana. Shortly before midnight, Lafley and two other men, Terry LaVelle (LaVelle) and Immanuel Pausanos (Pausanos), entered the bar and asked Carey and his group for help in jump-starting their vehicle. The Careys refused to help Lafley because he was loud, obnoxious, and seemed intoxicated. Lafley admitted that he had consumed about twelve cans of beer from noon until the time he arrived at the Arizona Bar. The bartender refused to serve Lafley and asked his group to leave.

¶6   Lafley asked to use the phone behind the bar and stood on the back of Chris Carey's stool while making his call, bumping and crowding her. When he hung up, the Carey group asked Lafley and his friends to leave the bar. They refused, and Carey and Lehti pushed

Lafley, LaVelle, and Pausanos out of the bar. All parties agree that no punches were thrown at this time.

¶7 Soon after, the bartender saw Lafley outside attempting to jump-start his car and noticed that one of his group was yelling at patrons as they attempted to come into the bar. The bartender called the police, and Butte police officer Jim Jemmings was dispatched to the scene. Officer Jemmings testified that Lafley and LaVelle seemed intoxicated. Lafley asked the officer if he would jump-start his vehicle, and Officer Jemmings told them to leave their vehicle and walk home or he would arrest them for driving under the influence of alcohol.

¶8 While the officer was speaking to Lafley, Carey and his friends attempted to approach them. Officer Jemmings testified that he told the Carey group to stay on their side of the street and that they complied. Officer Jemmings stated that he waited at the scene until the Lafley group had left and that no altercations occurred at that time. However, Lafley testified that Carey punched Pausanos while Officer Jemmings was at the scene, but the officer refused to arrest him.

¶9 Lafley, LaVelle, and Pausanos left the scene and proceeded to walk home. At home, Lafley called the 911 police dispatch center and told the operator that he had a 9mm pistol and intended to return to the Arizona Bar and "settle the score." The dispatcher traced the call and sent Officer Jemmings and Lieutenant Jeffrey Miller to speak with Lafley. Lafley admitted that he had made the call, but assured the officers that he did not own a gun and did not intend to shoot anyone. The officers advised Lafley not to return to the bar as it would only create further problems.

¶10 Against the officers' advice, Lafley returned to the bar around 1:30 a.m. accompanied by LaVelle's 16-year-old son. Lafley testified at trial that he walked into the bar and asked the bar patrons: "What is your guys's problem?" He testified that Leverton then hit him in the face and pushed him onto a pool table. Lafley stated that Carey came toward him and, as Lafley pushed him away, Carey tripped over a bar stool and fell. Lafley testified that Lehti jumped on him and pushed him to the ground and that several others held him down.

¶11 The testimony of all of the other witnesses contradicts Lafley's story. Mrs. Carey testified that she saw Lafley run into the bar toward her husband carrying a metal table leg. She stated that Lafley swung at Carey, hit him, and knocked him off of his stool. Mrs. Carey testified that two or three bar patrons then got on top of Lafley and took his

weapon. Mrs. Carey testified that at no time did her husband or anyone else in the bar do anything to provoke the attack and that Lafley was only struck by other bar patrons after he had struck Carey.

¶12    Carey testified that he was sitting at the bar talking to the bartender when two men came in the door and rushed over to where he was sitting. He next recalls being hit across the top of his back and shoulders with something hard and being knocked off of his bar stool. He testified that he then saw someone hit Lehti and that he and Leverton tackled the assailant and took the weapon from him.

¶13    The bartender testified that he was counting the money in the till when he heard someone yelling. In the mirror behind the bar, he saw a man carrying an object that looked like a long, black pipe run toward Carey and start into a full swing. When the bartender turned around, Carey was on the ground. The bartender testified that Leverton then tackled Lafley. The bartender stated he pushed the hold-up alarm to alert the police and took the weapon from Lafley.

¶14    Lehti testified that he was in the restroom when Carey was allegedly attacked, but that when he exited the restroom, Lafley was in front of him with a "club" in his hand. Lehti testified that Lafley hit him with the weapon, knocking him to the floor, and then hit him again. Lehti then saw Leverton and another person tackle Lafley. Carey, Leverton, and Lehti all testified that no physical altercation occurred in the bar prior to Lafley's striking Carey.

¶15    Carey suffered a ruptured spleen as a result of the incident and spent eight days in the hospital. A doctor testified at trial that Carey's injuries were caused by a strike to his side, consistent with being hit with a blunt object.

¶16    Officer Jemmings testified that when he arrived at the Arizona Bar, several people were holding Lafley down on the ground and that Mrs. Carey told him that Lafley had hit her husband with a pipe. Lieutenant Miller testified that someone handed him a metal table leg and told him that Lafley had used it to hit Carey in the back. The officers arrested Lafley for assault. In an interview with Officer Jemmings the next morning, LaVelle's son stated that Lafley was carrying a weapon on the way to the bar and that he accompanied Lafley to the bar to act as Lafley's "backup." At trial, he denied these statements.

¶17    Lafley was charged by information with aggravated assault in violation of § 45-5-202(2)(a), MCA. A jury found Lafley guilty of assault, and he was sentenced to 10 years in the Montana State Prison plus 2 years for the use of a dangerous weapon.

## Discussion

¶18    1. Did Lafley establish the elements of the defense of justifiable use of force?

¶19    ▮ Lafley argues that the jury erred in finding that he did not meet his burden of proving the defense of justifiable use of force at trial. We review a jury's verdict to determine whether the verdict is supported by substantial credible evidence. *Tanner v. Dream Island, Inc.* (1996), 275 Mont. 414, 422, 913 P.2d 641, 646.

¶20    ▮ A defendant is justified in the use of force "against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force." Section 45-3-102, MCA. A defendant who raises this defense has the burden of producing sufficient evidence on the issue to raise a reasonable doubt as to his or her guilt. *State v. Daniels* (1984), 210 Mont. 1, 16, 682 P.2d 173, 181.

¶21    When the defendant is the aggressor, however, the defense of justifiable use of force is only available in two very narrow circumstances. Section 45-3-105, MCA, states:

The justification described in 45-3-102 through 45-3-104 is not available to a person who:

(1) is attempting to commit, committing, or escaping after the commission of a forcible felony; or

(2) purposely or knowingly provokes the use of force against himself, unless:

(a) such force is so great that he reasonably believes that he is in imminent danger of death or serious bodily harm and that he has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or serious bodily harm to the assailant; or

(b) in good faith, he withdraws from physical contact with the assailant and indicates clearly to the assailant that he desires to withdraw and terminate the use of force but the assailant continues or resumes the use of force.

The overwhelming weight of the evidence in this case supports a finding that Lafley was the aggressor in the altercation occurring at the Arizona Bar.

¶22    Barring Lafley, all of the eyewitnesses testified that Lafley entered the Arizona Bar and, unprovoked, struck Carey in the side with a metal table leg. The bartender, Carey, Mrs. Carey, and Leverton all testified that no physical, or even verbal, altercation occurred

prior to Lafley's striking Carey. The record contains evidence that Lafley proceeded to strike Lehti, at which time Carey and Leverton tackled him to the ground. When the police officers arrived at the scene, they recovered a metal table leg and were told that Lafley used it to strike Carey. Lafley's testimony is that he was attacked by all of the bar patrons when he walked into the bar. However, the jury was free to disbelieve his testimony. *See State v. Ahmed* (1996), 278 Mont. 200, 212, 924 P.2d 679, 686 (holding that a jury's determinations of credibility will not be disturbed on appeal). We determine that the jury had sufficient evidence to find that Lafley was the aggressor and, thus, that § 45-3-105, MCA, applied.

¶23   Under § 45-3-105, MCA, an aggressor is justified in his use of force only when he believes he is in imminent danger of death or serious bodily injury and has exhausted every reasonable means of escape or when he first makes a good faith attempt to withdraw from the altercation. Lafley argues that assuming his entry into the Arizona Bar made him the aggressor, "once all the patrons of the bar converged upon him and began beating him, he lost his status as aggressor and his ability to withdraw from the altercation." However, this argument ignores the evidence of Lafley's aggressive conduct prior to the bar patrons' attacking him. Several witnesses testified that physical force was used against Lafley only after he, immediately upon entering the bar, struck Carey and Lehti.

¶24   The exceptions whereby an aggressor may justifiably use force assume that the aggressor, before engaging in the use of force in question, has exhausted all means of escape or has attempted to withdraw from the force being inflicted upon him. In the present matter, the record indicates that Lafley's assaultive conduct was completely unprovoked; it was not in response to any threat to Lafley nor did it follow any attempt by Lafley to escape or withdraw. Therefore, we hold that the record contains substantial credible evidence to support the jury's verdict.

¶25   2. Did the District Court violate the law by sentencing Lafley to an additional 2 years imprisonment for his use of a dangerous weapon in the commission of the crime?

¶26   ■ In a direct appeal, the defendant is limited to those issues that were properly preserved in the district court and to allegations that the sentence is illegal or exceeds statutory mandates. Section 46-20-104, MCA; *State v. Lenihan* (1979), 184 Mont. 338, 602 P.2d 997. We have held that "a sentence is not illegal when it is within the parameters provided by statute." *State v. Gunderson* (1997), 282

Mont. 183, 187, 936 P.2d 804, 806; *see also State v. Goulet* (1996), 277 Mont. 308, 921 P.2d 1245; *State v. Nelson* (1995), 274 Mont. 11, 906 P.2d 663.

¶27    Lafley challenges his sentence of 2 years imprisonment for the use of a weapon in the commission of the assault, arguing that it constitutes double jeopardy and is cruel and unusual punishment. However, Lafley did not challenge his sentence in the District Court. Further, under § 46-18-221, MCA, a person who uses a dangerous weapon in the commission of an offense may "be sentenced to a term of imprisonment in the state prison of not less than 2 years or more than 10 years. ..." Thus, the sentence imposed by the District Court is within the statutory parameters. Because Lafley did not challenge his sentence in the District Court and is not challenging the legality of the sentence, we hold that he is barred from raising this issue on appeal.

¶28    Based on the foregoing, we affirm the decision of the District Court.

CHIEF JUSTICE TURNAGE, JUSTICES NELSON, TRIEWEILER and HUNT concur.