No. 98-176

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 202

STATE OF MONTANA,

Plaintiff and Respondent,

v.

CLAY TAYLOR and KAREN TAYLOR,

Defendants and Appellants.

APPEAL FROM: District Court of the Sixteenth Judicial District,

In and for the County of Garfield,

The Honorable Joe L. Hegel, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Clay Taylor and Karen Taylor, Pro Se, Jordan, Montana

For Respondents:

Hon. Joseph P. Mazurek, Attorney General; C. Mark Fowler,

Assistant Attorney General, Helena, Montana

Nickolas C. Murnion, Garfield County Attorney, Jordan, Montana

Elizabeth Horsman, Special Prosecutor, Helena, Montana

---

Submitted on Briefs: March 16, 2000

Decided: July 20, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

1. ¶By Information filed in the District Court for the Sixteenth Judicial District in Garfield County, the Defendant, Clay Taylor, was charged with two counts of impersonating a public servant, a misdemeanor, in violation of § 45-7-209, MCA (1993), and the Defendant, Karen Taylor, was charged with impersonating a public servant by accountability, a misdemeanor, in violation of § 45-7-209, MCA (1993), and § 45-2-302(3), MCA (1993). Following a jury trial, the Taylors were convicted of the charged offenses. The District Court sentenced the Taylors to a two-year deferred sentence, community service, a $500 fine per charge and other conditions. The Taylors appeal their convictions and sentences. We affirm in part and remand in part.

2. ¶The following issues are presented on appeal:

3. ¶1. Did the District Court err when it instructed the jury on § 45-7-209, MCA (1993), the impersonating a public servant statute?

4. ¶2. Was there sufficient evidence to support Karen Taylor's conviction for impersonating a public servant by accountability?

5. ¶3. Were the Taylors denied their right to a speedy trial?

6. ¶4. Were the Taylors' sentences illegal?

7. ¶5. Were the Taylors deprived of due process and equal protection?

## FACTUAL BACKGROUND

1. ¶The Defendants, Clay and Karen Taylor, are husband and wife who live on and work their ranch in Garfield County. The Taylors are associated with persons who reside in and around Garfield County, known as the "Freeman." In early 1994, several of the group's members were suffering financial difficulties due to debts owed to creditors such as GMAC, the IRS, and the Federal Land Bank.

2. ¶On January 27, 1994, Richard Clark, Dan Peterson, Rodney Skurdal, and Gary Clark entered the office of JoAnn Stanton, the Clerk and Recorder of Garfield County, while a crowd of approximately 30 other people gathered outside of Stanton's office. The four men requested that Stanton file and record a document entitled "Writ of Habeas Corpus," which they stated would allow them to establish their own supreme court in Garfield County. Following Stanton's refusal to file the

document without a proper filing fee, the four men informed Stanton that they were going to conduct their own supreme court in the Garfield County courtroom that day.

3. ¶Following the group's declaration that they were going to conduct their own supreme court in the Garfield County courtroom, Stanton called county attorney, Nickolas Murnion, who informed the group that they could not use the courtroom. Garfield County Sheriff, Charles Phipps, also arrived and informed the group that they could not use the courtroom. However, the group decided to use the courtroom anyway. Sheriff Phipps did not attempt to stop the group from using the courtroom, but remained in the courtroom and videotaped the group's proceedings.

4. ¶Richard Clark presided over the proceedings and announced that the group was establishing their own common law court. The group prepared several documents entitled "Writ of Attachment," which included the heading "Justices' Court" and listed Clay Taylor's name as "Justice." The group requested that Sheriff Phipps serve the various writs on the named parties and threatened to serve a Writ of Attachment on the Sheriff's personal property if he refused. The group then ended the proceedings and left the Garfield County courtroom.

5. ¶On February 8, 1994, in response to the group's activities of January 27, 1994, the Garfield County Commissioners passed Resolution 94-11 which stated that the group's supreme court of Garfield County:

[I]s a fictitious court with no basis under the Montana Constitution or the statutes of Montana and no facilities owned and controlled by Garfield County including the Courtroom of the Garfield County Courthouse shall be available for use of said fictitious "Supreme Court of Garfield County/comitatus" from this time forward; and

BE IT FURTHER RESOLVED that any future proceedings of said fictitious "Supreme Court of Garfield County/comitatus" on Garfield County facilities shall be considered criminal trespass . . . .

1. ¶Following the Garfield County Commissioners' Resolution, Stanton received several documents that she was requested to file and record. The documents included the typed statement, "Justice of the peace in and for Garfield County" and then the written signature of Clay Taylor. Some of the documents also included Karen Taylor's written signature and the words "Jurat in Law: Honorable Justice

Karen Taylor, in and for Garfield county."

2. ¶In March 1994, Renee Moomey, an attorney representing GMAC, filed a complaint in the Garfield County District Court against Gary and Penelope Despois in which she sought the payment of a $2000 arrearage owed for the Despois' truck or, alternatively, the truck's repossession. Subsequently, Moomey received two documents, both captioned "State of Montana vs. Renee L. Moomey," one entitled "Common Law Affidavit by Penelope S. DesPois, sui juris" and the other entitled "Summons." Both documents bore Clay Taylor's signature as "Justice of the Peace," and the "Summons" bore the signature of Karen Taylor as a "common law witness" and "Jurat in Law." The documents were personally "served" on Moomey by Dan Peterson.

3. ¶Don Dahlseide, of the Small Business Administration, was a loan officer working on collection of the debt of William and Agnes Stanton. Dahlseide informed the Stantons that their loan with the Small Business Administration was delinquent. Following Dahlseide's contact with the Stantons he received a document captioned "State of Montana vs. U.S. Small Business Administration, Don Dahlseide et al.," and entitled "Common Law Affidavit by William L. Stanton." The document was signed by Clay Taylor as "Justice of the Peace."

4. ¶On November 4, 1994, following a jury trial in the Garfield County Justice Court, Clay Taylor was convicted of two counts of impersonating a public servant and Karen Taylor was convicted of impersonating a public servant by accountability. On December 8, 1994, the Taylors filed a notice of appeal with the District Court. Accordingly, the State filed an Information with the District Court on January 30, 1995, charging Clay Taylor with two counts of impersonating a public servant, a misdemeanor, in violation of § 45-7-209, MCA (1993), and the Defendant, Karen Taylor, with impersonating a public servant by accountability, a misdemeanor, in violation of § 45-7-209, MCA (1993), and § 45-2-302(3), MCA (1993). The Information charged the following:

That the Defendant, Clay Taylor, falsely pretended to hold a position in the public service, namely Justice of the Peace, with the purpose to induce Don Dahlseide to submit to such pretended official authority or otherwise to act in reliance upon that pretense to his prejudice, by Defendant's actions in issuing a Common Law Affidavit . . . .

That the Defendant, Clay Taylor, falsely pretended to hold a position in the public service, namely Justice of the Peace, with the purpose to induce Renee L. Moomey to submit to

such pretended official authority or otherwise to act in reliance upon that pretense to his prejudice, by Defendant's actions in issuing a Summons and Common Law Affidavit . . . .

That the Defendant, Karen Taylor, with the purpose to facilitate the commission of the offense of impersonating a public servant, aided or abetted Clay Taylor by Defendant's actions in signing and affirming the appointment of Clay Taylor as "Justice of the Peace" . . . .

1. ¶On February 2, 1995, the State requested a change of venue for the place of trial. On February 28, 1995, the Taylors pled not guilty to the charges against them. The Taylors requested that the omnibus hearing be set after 60 days, and waived their right to a speedy trial for that 60-day period. On June 27, 1995, the Taylors requested a continuance in order to find new counsel. On August 4, 1995, the District Court granted the Taylors' request and ordered them to retain counsel by September 8, 1995. On September 25, 1995, the District Court issued its scheduling order which established January 17, 1996 as the date of trial. On October 23, 1995, the Taylors filed a motion to amend the scheduling order.

2. ¶At the pretrial hearing on December 21, 1995, the Taylors requested that the District Court amend its scheduling order and requested additional time before trial. The District Court continued the trial until March 18, 1996. On March 4, 1996, upon its own motion, the District Court continued the trial until a later date, stating that following the District Court's ruling on defense motions the court would set a scheduling conference. On October 22, 1996, the District Court set forth its memorandum and order regarding defense motions and the state's motion for change of venue. On November 6, 1996, the Taylors filed a motion to dismiss for lack of speedy trial and a motion for disqualification of Judge Hegel. On June 10, 1997, the Taylor's motion to disqualify was denied. The District Court scheduled trial for November 17, 1997.

3. ¶A jury trial was held on November 17 and 18, 1997. The Taylors were found guilty of the charges and sentenced to a two-year deferred sentence, 40 hours of community service, and a $500 fine for each charge. The Taylors now appeal their convictions and sentences.

## DISCUSSION

## ISSUE 1

1. ¶Did the District Court err when it instructed the jury on § 45-7-209, MCA (1993), the statute which sets forth the offense of impersonating a public servant?

2. ¶The standard of review of jury instructions in criminal cases is whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *See State v. Johnson*, 1998 MT 289, ¶ 28, 291 Mont. 501, ¶ 28, 969 P.2d 925, ¶ 28. Additionally, we recognize that a district court has broad discretion when it instructs the jury. *See State v. Weaver*, 1998 MT 167, ¶ 28, 290 Mont. 58, ¶ 28, 964 P.2d 713, ¶ 28.

3. ¶Section 45-7-209, MCA (1993), provides:

(1) A person commits the offense of impersonating a public servant if he falsely pretends to hold a position in the public service with purpose to induce another to submit to such pretended official authority or otherwise to act in reliance upon that pretense to his prejudice.

1. ¶The Taylors assert that the District Court erred by not instructing the jury that the proper interpretation of this statute requires that the State prove that Clay Taylor pretended to be a specific person in the public service, for example, that Clay Taylor was impersonating the actual Justice of the Peace of Garfield County. The Taylors contend in the alternative that the statute is void for vagueness.

2. ¶The District Court gave the following jury instruction:

A person commits the offense of Impersonating a Public Servant if he falsely pretends to hold a position in the public service with purpose to induce another to submit to such pretended official authority or otherwise to act in reliance upon that pretense to his prejudice.

1. ¶Section 1-2-101, MCA, provides the following rule of statutory interpretation:

In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.

1. ¶The portion of the statute at issue states: "falsely pretends to hold a position in the public service." Clay Taylor was charged with impersonating a public official based on his representation that he was a "Justice of the Peace." Clearly, the statute does not include language requiring that a person must falsely pretend to hold a specific position in the public service. In this case, it did not require that Clay Taylor pretended to be the actual Justice of the Peace of Garfield County. The Taylors' assertion that the statute should be interpreted in such a manner violates the rule of statutory construction set forth in § 1-2-101, MCA. Accordingly, we conclude that the District Court's jury instruction accurately explained the statutory law applicable to the case pursuant to § 45-7-209, MCA (1993).

2. ¶The Taylors alternately contend that if the statute is not interpreted by this Court in the same manner as the Taylors interpret the statute, then the statute is void for vagueness.

1. ¶We presume that all statutes are constitutional. It is the duty of courts, if possible, to construe statutes in a manner that avoids unconstitutional interpretation. *See State v. Nye* (1997), 283 Mont. 505, 510, 943 P.2d 96, 99. When the constitutionality of a statute is challenged, the party making the challenge bears the burden of proving, beyond a reasonable doubt, that the statute is unconstitutional, and any doubt is to be resolved in favor of the statute. *See Nye*, 283 Mont. at 510, 943 P.2d at 99.

2. ¶In *State v. Crisp* (1991), 249 Mont. 199, 202, 814 P.2d 981, 983, we stated the following test for whether a statute is void on its face for vagueness:

A statute is void on its face if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden. No person should be required to speculate as to whether his contemplated course of action may be subject to criminal penalties.

(Citations omitted.)

1. ¶The conduct proscribed by § 45-7-209, MCA (1993), is not unconstitutionally vague. The statute clearly sets forth that anyone who pretends to hold a position in the public service with the purpose to induce another to submit to that authority or which causes another to rely upon that pretense to his benefit, is within the conduct proscribed by the statute. The language of § 45-7-209, MCA (1993), is sufficient to

give a person of ordinary intelligence fair notice that conduct such as the Taylors' is forbidden. Accordingly, we conclude that § 45-7-209, MCA (1993), is not unconstitutionally vague on its face.

## ISSUE 2

1. ¶Was there sufficient evidence to support Karen Taylor's conviction for impersonating a public servant by accountability?
2. ¶We review the sufficiency of the evidence in a criminal case to decide whether, upon viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See State v. Heffner*, 1998 MT 181, ¶ 22, 290 Mont. 114, ¶ 22, 964 P.2d 736, ¶ 22.
3. ¶Section 45-2-302, MCA (1993), states the following, in relevant part:

A person is legally accountable for the conduct of another when:

. . . .

(3) either before or during the commission of an offense with the purpose to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense.

1. ¶Karen Taylor asserts that the evidence presented at trial was insufficient to support her conviction for impersonating a public servant by accountability. Karen contends that evidence of the required intent or purpose to promote or facilitate Clay Taylor's actions was not presented.
2. ¶However, the evidence reveals that Karen was present on January 27, 1994, when the group of citizens took over the Garfield County courtroom in order to set up their own supreme court of Garfield County. Joann Stanton, the Clerk and Recorder of Garfield County testified that she received a document entitled "Common Law Affidavit," which was signed by Karen Taylor, among others, which purported to remove the Garfield County Commissioners from office. Stanton also testified that

she was requested to file a document which set forth Clay Taylor's appointment as "Justice of the Peace, in and for Garfield County" which was also signed by Karen Taylor.

3. ¶Stanton testified that she received another document, entitled "Writ of Protection," issued by Karen Taylor, which identifies Clay Taylor as "Justice of the Peace," and bears Clay's written signature as well as Karen's written signature. Additionally, the document entitled "Summons" received by attorney Renee Moomey, which contained the caption "State of Montana vs. Renee L. Moomey" and was signed by Clay Taylor as "Justice of the Peace" was also signed by Karen Taylor as "Jurat in Law."

4. ¶Based on the testimony and evidence presented at trial, viewed in a light most favorable to the prosecution, we conclude that there existed sufficient evidence from which a rational jury could have found that Karen Taylor, with the purpose to facilitate Clay Taylor's impersonation of a Justice of the Peace, aided or abetted Clay Taylor as required by § 45-2-302, MCA. Accordingly, we conclude that there was sufficient evidence to support Karen Taylor's conviction for impersonating a public servant by accountability.

## ISSUE 3

1. ¶Were the Taylors denied their right to a speedy trial?

2. ¶The Taylors assert that they were denied their right to a speedy trial because 1074 days passed between the date of appeal de novo from their Justice Court conviction and the date of their District Court trial. The Taylors contend that of the 1074 days, 921 days are chargeable to the State, and that during this time period they were prejudiced by the media coverage of the Freeman stand-off, as well as the personal anxiety and family problems which resulted from having criminal charges pending against them for such a long period of time.

3. ¶In response, the State asserts that this issue is not reviewable as part of this appeal because the District Court record before this Court does not include the District Court's order deciding the Taylors' motion to dismiss for lack of speedy trial, nor a transcript of any proceeding at which the motion was heard. In the alternative, the State contends that this Court should remand this issue to the District Court for consideration pursuant to this Court's recent decisions in *City of Billings v. Bruce*, 1998 MT 186, 290 Mont. 148, 965 P.2d 866, and *State v. Hardaway*, 1998 MT 224, 290 Mont. 516, 966 P.2d 125, for development of the record and entry of written findings of fact, conclusions of law, and an order.

4. ¶Because the District Court's decision regarding the Taylors' motion to dismiss for denial of speedy trial cannot be found in the District Court's record, we conclude that it is necessary to remand this issue to the District Court for a hearing to consider the Taylors' motion to dismiss for lack of speedy trial, applying the test and analysis set forth in *Bruce* and *Hardaway.*

## ISSUE 4

1. ¶Were the Taylors' sentences illegal?

2. ¶In *State v. Lafley*, 1998 MT 21, 287 Mont. 276, 954 P.2d 1112, we held that "in a direct appeal, the defendant is limited to those issues that were properly preserved in the district court and to allegations that the sentence is illegal or exceeds statutory mandates." *Lafley*, ¶ 26. Further, we have held that "a sentence is not illegal when it is within the parameters provided by statute." *Lafley*, ¶ 26.

3. ¶The Taylors challenge their two-year deferred sentence and total fines of $1500, on the bases that they were indigent and therefore a fine was not allowed, and that the District Court failed to clearly explain the reasons for their sentences in violation of § 46-18-102(3)(b), MCA.

4. ¶The State contends that the sentences imposed on the Taylors were not illegal. The State further asserts that because the Taylors failed to object at the time of sentencing to the sentence imposed on them, or the District Court's explanation of their sentences, this issue is waived on appeal.

5. ¶Section 46-18-201, MCA, provides the following in relevant part:

(1)(a) Whenever a person has been found guilty of an offense upon a verdict of guilty or a plea of guilty or nolo contendere, a sentencing judge may defer imposition of sentence, except as otherwise specifically provided by statute, for a period:

. . . .

(ii) not exceeding 2 years for a misdemeanor . . . if a financial obligation is imposed as a condition of sentence . . . .

1. ¶Section 46-18-231(3), MCA, provides:

The sentencing judge may not sentence an offender to pay a fine unless the offender is or will be able to pay the fine . . . .

1. ¶The Taylors have failed to cite to anything in the record which would support their assertion that the fine portion of their sentences is illegal because of their inability to pay the fines. The District Court had no information regarding the Taylors' alleged indigency at the time of sentencing, nor did the Taylors object to the imposition of the fine at the time of sentencing based on an inability to pay the fines. Accordingly, absent facts which would support the Taylors' assertion that the imposition of a fine was illegal because of the Taylors' alleged indigency, we conclude that the Taylors have waived this issue on appeal by failing to object at the time of sentencing.

2. ¶Additionally, our review of the sentencing hearing transcript discloses that the Taylors failed to object to the sufficiency of the District Court's reasons for the imposition of the sentence. Accordingly, the Taylors have also waived this issue on appeal.

## ISSUE 5

1. ¶Were the Taylors deprived of due process and equal protection?

2. ¶The Taylors assert that the District Court denied them due process and equal protection because of the District Court's bias, which is evidenced by the District Court's failure to rule in the Taylors' favor on their motions and objections. The Taylors set forth twelve instances which they allege support their contention that they have been denied due process and equal protection. The Taylors, however, do not set forth any legal authority in support of their assertions.

3. ¶The State points out that the Taylors failed to specifically object to any of the instances of alleged bias of the District Court and, therefore, asserts that this is a constitutional argument that the Taylors did not make to the District Court. Consequently, the State contends that the Taylors have failed to preserve this issue for appeal. We agree.

4. ¶Section 46-20-701(2), MCA, provides:

Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. A claim alleging an error affecting jurisdictional or constitutional rights may not be noticed on appeal if the alleged error was not objected to as provided in 46-20-104,

unless the convicted person establishes that the error was prejudicial as to the convicted person's guilt or punishment and that:

(a) the right asserted in the claim did not exist at the time of the trial and has been determined to be retroactive in its application;

(b) the prosecutor, the judge, or a law enforcement agency suppressed evidence from the convicted person or the convicted person's attorney that prevented the claim from being raised and disposed of; or

(c) material and controlling facts upon which the claim is predicated were not known to the convicted person or the convicted person's attorney and could not have been ascertained by the exercise of reasonable diligence.

1. ¶Because the Taylors failed to object to the constitutional errors they now allege as provided for in § 46-20-104, MCA, and because none of the exceptions set forth in § 46-20-701(2), MCA, apply in this case, we conclude that the Taylors have waived this issue and cannot raise it for the first time on appeal.
2. ¶For these reasons, we affirm the District Court in part and remand to the District Court for further proceedings consistent with this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ KARLA M. GRAY

/S/ JIM REGNIER